DONALDSON (POLLOCK v.). See Case No. 11,254.

DONALDSON (UTLEY v.). See Case No. 16,807.

DONAN (UNITED STATES v.). See Case No. 14,983.

## Case No. 3,986.

### The DON JUAN.

[8 Ben. 489.][1]

District Court, E. D. New York. July, 1876.

#### COLLISION AT PIER—TUG AND TOW.

A tug, in the employ of the Erie Railway Co., was towing a schooner on a hawser astern, out from a slip at Jersey City. The superintendent of tugs for the company was on the pier directing the movements of the tug and schooner. The tide was flood, and a line was got out from the schooner to the pier on the lower side of the slip, which was shorter than the pier on the upper side, to hold her up against the tide. This line was cast off, by order of the mate of the schooner, before she had cleared the pier on the upper side, and her rigging caught on a yard of a bark lying alongside of the upper pier and broke it: *Held*, that the tug was not responsible to the bark for the damage done.

This was a libel by the owner of the bark Francisco Bellagamba to recover damages for the breaking of one of her yards by its being caught by the rigging of the schooner

---

[1] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

Moss Glen, while in tow of the tug Don Juan. The bark was lying at the lower side of a pier near the end. The next pier below was a shorter pier. The Moss Glen was being towed out of the slip between the piers astern of the Don Juan, on a hawser.

F. A. Wilcox, for libellants.
R. D. Benedict, for respondents.

BENEDICT, District Judge. The damage complained of consists in the breaking of the yard of the bark Francisco Bellagamba, by the fore-rigging of the schooner Moss Glen. The bark was moored alongside a pier, and the schooner was passing by the bark, going out of the slip in tow of the tug Don Juan, upon a hawser. The proofs show that the cause of the schooner's coming in contact with the bark was the slacking of a line, which had been run from the schooner to the other side of the slip for the purpose of keeping the schooner up against a strong flood tide then running through the slip, and which, as soon as the line was slacked, carried the schooner upon the bark. The slacking of this line was not the act of the tug, but of the mate in command of the schooner. The injury that followed was done by the schooner and not by the tug, and the negligence of her mate in directing the line to be cast off was the cause of her doing it. For such an act of negligence, not possible to be prevented by the tug, and which brought the schooner in contact with the bark in spite of all care and effort on the part of the tug, the tug is not responsible.

It is stated in the answer that the tug was in the service of the Erie Railway Company, and that Homans, the superintendent of tugs for said company, had charge of the movements of the tug and of the schooner; but Homans did not have charge on board the schooner at the time the line was thus slackened. The mate of the schooner had charge there. He gave the order to slack the line and so brought his vessel in contact with the bark, in spite of the efforts of Homans and of the tug to keep her clear. This act of the mate of the schooner is not made the act of the tug by the circumstance that Homans had charge of the movements of the tug and schooner. The act was an independent act of negligence, committed by the person in that particular responsible for what was done on board his vessel, which resulted in damage being caused by his vessel to the bark, and is not in law an act of the tug for which she can be held responsible in this action. Whether as between the schooner or the bark the responsibility is upon the schooner or the bark by reason of the condition of the yards of the bark is a question unnecessary to determine here. The libel must therefore be dismissed with costs.